# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 50047 | **DATE** | 3/31/2011 |
| **CASE TITLE** | Visse Chest, et al. vs. The City of Freeport, et al. | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, the court grants summary judgment as to all defendants on all claims and dismisses this cause in its entirety.

*Philip G. Reinhard*

■[ For further details see text below.]

Electronic Notices.

## STATEMENT - OPINION

Plaintiff, Visse Chest, as administrator of the estate of Reginald Pendleton, deceased, filed an amended complaint[1] pursuant to 42 U.S.C. § 1983, and Illinois law against defendants, the City of Freeport, Illinois (City), Aaron Dykema, a City police officer, Thomas Madigan, a City police officer, Andy Schroeder, a City police officer, the Freeport Fire Department, William Backus, a City firefighter/EMT, Curt Timmer, a City firefighter/EMT, and Larry Moshure, a City firefighter/EMT.[2] While the amended complaint is not well-drafted, it essentially alleges a claim for failure to provide adequate medical care in a reasonable manner in violation of the United States Constitution and a claim for wrongful death under Illinois law.[3]

Defendants have filed a motion for summary judgment in which they raise the following contentions: (1) the evidence does not support a claim of deliberate indifference to a serious medical need under the Fourteenth Amendment; (2) there is no evidence that any of defendants violated a clearly established right and they are therefore entitled to qualified immunity; (3) there is no evidence of any official policy or custom that would support a claim of municipal liability against the City; (4) because there is no evidence that any defendant acted in violation of the Constitution, plaintiff's wrongful death claim must fail; (5) the individual defendants were all engaged in either law enforcement or discretionary functions and are therefore shielded from liability for the state-law claim by various provisions of the Illinois Local Government and Local Government Employee's Tort Immunity Act (Tort Immunity Act), 745 ILCS 10/1-101 et seq.; (6) plaintiff's expert disclosure of Linda Lutes, RN, should be disregarded under Fed. R. Civ. P. 26; and (7) the Freeport Fire Department is not a suable entity. Plaintiff filed a response which only addresses defendants' contention that they did not violate the Fourteenth Amendment by being deliberately indifferent to his serious medical needs. Defendants, in turn, filed a reply in which they argue that plaintiff has waived all other issues by failing to respond to them.

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Sallenger v. City of Springfield, Illinois, 630 F. 3d 499, 503 (7th Cir. 2010). At this stage of the proceedings, the court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. McCann v. Iroquois Memorial Hospital, 622 F. 3d 745, 752 (7th Cir. 2010).

As an initial matter, the court finds that plaintiff has waived all claims except for the alleged violation of the

Constitution based on the failure to provide medical care. This waiver arises from plaintiff's failure to address any of the contentions related to those claims in the face of defendants' motion for summary judgment. See <u>United States v. 5443 Suffield Terrace,</u> <u>Skokie, Illinois,</u> 607 F. 3d 504, 510 (7th Cir. 2010).

That leaves the issue as to whether any of the individual defendants violated the Constitution by failing to provide medical care to the decedent. In that regard, the preliminary question to be decided is which legal standard applies to this claim.

The parties assume that it is the Fourteenth Amendment standard of deliberate indifference because they consider decedent to have been a pretrial detainee.[4] This is an incorrect assumption, however, as the Fourth Amendment's objective reasonableness standard applies.[5] This is so because the claim pertains to the medical needs of a person under warrantless arrest[6] who has not yet had a judicial determination of probable cause. <u>Sallenger</u>, 630 F. 3d at 503. Under this standard, there are generally four criteria that are to be considered in determining whether an officer responded reasonably to a detainee's need for medical care: (1) the officer's notice of the need for medical attention; (2) the seriousness of the need; (3) the nature or scope of the required treatment; and (4) any countervailing police interests such as the need to prevent destruction of evidence or other similar law enforcement interests. <u>Sallenger</u>, 630 F. 3d at 503.

In this case, the undisputed evidence establishes that defendants, Dykema, Madigan, and Schroeder, were all patrolling in a high crime area of the City as part of their drug enforcement duties. They observed a van which they believed might contain a person who was the subject of a warrant. After following the van a short distance, they observed it make an illegal turn and decided to stop it.

In an effort to stop the van, they activated the flashing blue and red lights on their unmarked car. When it became apparent that the van was not going to stop, they also activated the siren. Rather than stopping, the van continued to drive at a relatively slow rate of speed. While they followed the van, they observed the driver twice appear to put something in his mouth and drink from a bottle-shaped object. After several more minutes of slow driving, the van pulled over and stopped.

The officers immediately exited their car and approached the van. The sole occupant was the decedent who they physically removed from the van. They placed him on the ground, handcuffed him, and then stood him up.

After standing him up, it appeared to the officers that he had something in his mouth. When one of them asked if he had anything in his mouth, he did not answer but instead swallowed. One of the officers described that it appeared the decedent was swallowing something. When asked by the officers what he swallowed, the decedent responded, "a pencil."

The officers were familiar with decedent and knew that he was a street-level dealer of cocaine. One of the officers was previously involved in an arrest of the decedent in which the decedent attempted to swallow some cocaine. The officers also found two empty plastic baggies each with a corner missing. According to one of the officers, drug dealers often put drugs in the corner of a plastic baggie, then twist the corner and remove it from the baggie.

Each of the officers testified at his deposition that he concluded that decedent might have swallowed some illicit substance, perhaps cocaine, prior to or at the time of his arrest. Officer Madigan initially thought that the decedent should be transported to the local hospital so that his stomach could be pumped for the purpose of retrieving any evidence that the decedent might have swallowed. The officers considered whether the hospital would perform a stomach pump without a warrant and whether they had probable cause at that point sufficient to obtain a search warrant. Ultimately, they agreed[7] to transport decedent to the police station, which was located about halfway between the location of the arrest and the hospital. The purpose of taking the decedent to the police station was to interview him in an effort to further develop the probable cause necessary to obtain a warrant to obtain and search his stomach contents. None of the officers at that time thought they needed to transport the decedent to the hospital for medical reasons.

The evidence is further undisputed that the decedent never stated at the arrest scene that he swallowed any cocaine or other drug. Further, he did not complain of any medical problem or medical condition prior to his being at the police station. Nor did the officers observe at the arrest scene or during the transport to the police station any symptoms that the decedent was suffering from anything he might have ingested.

Once the officers arrived at the police station, they placed the handcuffed decedent in an interview room. They continued to ask him what he swallowed and whether he swallowed any drugs. The decedent continued to deny

swallowing any drugs and reiterated his earlier answer that he had swallowed a pencil.

While they were questioning the decedent, he began to turn pale. The decedent then advised the officers that he felt the need to vomit, and they provided him a garbage can. After several attempts to vomit, the decedent began to convulse. The convulsions increased, and the decedent fell to the floor. The officers removed the handcuffs at that point, and another officer outside the room requested an ambulance.

A few minutes later, an ambulance arrived with three crew members, defendants Timmer, Moshure, and Backus, who immediately began to assess and treat the decedent. They transported the decedent to the hospital, arriving approximately 15 minutes after they began treating the decedent at the police station. The amount of time that elapsed from the initial traffic stop until the decedent arrived at the hospital was about 40 minutes. Thus the time from the initial traffic stop until the ambulance arrived at the police station was about 25 minutes.

The decedent died later that day after being transferred to another hospital. The autopsy revealed two pieces of plastic bag, one in the decedent's esophagus and the other in his stomach. Also found in his stomach were several small chunks of cocaine. Subsequent blood and urine testing revealed very high levels of cocaine and cocaine metabolites in his system. The cause of death was determined to be the "adverse effects of cocaine."

Applying these undisputed facts to the claim in this case, the court finds there is no evidence sufficient to raise a triable issue under the applicable Fourth Amendment standard. There can be no doubt that once the decedent manifested physical symptoms at the police station that the three officers reacted reasonably in obtaining prompt medical care for the decedent. There is likewise no evidence that any of the there other individual defendants who made up the ambulance crew failed to provide reasonable medical care under the Fourth Amendment. Thus, these latter three defendants are entitled to summary judgment on the Fourth Amendment claim.

That leaves the issue, for purposes of Fourth Amendment analysis, of whether the three officers who initially arrested the decedent and transported him to the police station failed to respond reasonably to his needs for medical care. It cannot be disputed that the decedent ultimately did have a serious medical need, beginning at the point he ingested the cocaine. But that fact alone does not dispose of the Fourth Amendment claim. While the officers had sufficient information to conclude that the decedent had swallowed something and that the substance swallowed might have been some sort of drug[8], they did not know if in fact a drug had been swallowed, what the drug was, or how much had been ingested.

In addition to this lack of knowledge, they did know that the decedent refused to admit to swallowing any drugs and insisted that he had swallowed a pencil. And he continued to persist in his denials of swallowing any drugs even when pressed by the officers at the police station.

Further, the decedent exhibited no symptoms of ingesting a drug or any other harmful substance until later at the police station. It was not unreasonable for the officers to conclude prior to observing any symptoms that he had not swallowed a significant amount of drugs. Of course, once the decedent displayed symptoms indicating a serious medical need at the police station, the officers acted without hesitation in obtaining prompt medical care.[9]

Under the totality of the circumstances known to the officers prior to the decedent displaying symptoms of a medical need, there is simply no triable issue as to whether they responded reasonably to his medical needs. The undisputed evidence shows that they in fact acted reasonably within the meaning of the Fourth Amendment and are entitled to summary judgment as to that claim.[10]

While the court has found all other claims waived, it notes that there is no evidence to support a <u>Monell</u> claim against the City. Additionally, there is no evidence sufficient to present to a jury on the issue of the wrongful death claim under Illinois law. Moreover, the three officers are entitled to immunity under the Tort Immunity Act as there is no evidence that any of them acted with wilful and wanton conduct in executing or enforcing any law. See 745 ILCS 10/2-202; <u>Carter v. Chicago Police Officers</u>, 165 F. 3d 1071, 1080-81 (7th Cir. 1998). Likewise, the three EMTs are immune under the Illinois Emergency Medical Services Systems Act because there is no evidence that they acted wilfully and wantonly in providing emergency medical care to the decedent. See 210 ILCS 50/3.150; see also <u>Abruzzo v. City of Park Ridge</u>, 231 Ill. 2d 324, 898 N.E. 2d 631 (Ill. 2008) (holding that the specific immunity provision of the EMS Act trumps the Tort Immunity Act). Thus, summary is also proper as to those to claims notwithstanding any waiver.

For the foregoing reasons, the court grants summary judgment as to all defendants on all claims and dismisses this cause in its entirety.

1. Although the complaint is entitled "First Amended Complaint," it is the only amended complaint and will be referred to as such.

2. Plaintiff also named numerous other defendants who have previously been terminated and for whom the present motion for summary judgment does not apply.

3. While Count I is captioned "42 U.S.C. § 1983 Wrongful Death," it appears that plaintiff intended to assert a claim for wrongful death under Illinois law as the amended complaint elsewhere refers to "the common law of Illinois." In any event, defendants consider the amended complaint as asserting a state-law wrongful death claim, and the court will as well.

4. While the amended complaint refers cursorily to the Fourth Amendment in its "Introduction," it nowhere else mentions the Fourth Amendment as the basis for any of its claims. Nor does plaintiff rely on the Fourth Amendment in its response to the motion for summary judgment. Having said that, the court considers plaintiff to have raised a Fourth Amendment claim in the amended complaint, albeit by the thinnest of reeds.

5. The Fourth Amendment requires a lesser showing by a plaintiff than the deliberate indifference standard of the Fourteenth Amendment. Williams v. Rodriguez, 509 F. 3d 392, 403 (7th Cir. 2007).

6. While defendants assert in passing that the decedent was never under arrest, this is belied by the facts of this case which clearly show that a reasonable person in the decedent's position would not have felt free to leave after being physically removed from the van, forced to the ground, and placed in handcuffs.

7. While Officer Madigan testified that his decision to have the decedent transported to the hospital was overrode by another officer, Officer Schroeder testified that the decision to transport the decedent to the police station was a mutual one among the three defendants. The court will, in the context of this summary judgment motion, accept Officer Schroeder's version as that favors plaintiff's case, at least as to Officer Madigan.

8. Plaintiff argues that even if they did not know he swallowed drugs they had reason to believe that he swallowed a pencil which is an inherently dangerous thing to do. While the court agrees that swallowing a pencil would ordinarily call for medical attention, the facts here cannot support a finding that the officers knew or had reason to know that the decedent swallowed a pencil. Rather, the undisputed facts show that the officers did not believe the decedent had swallowed a pencil. This belief was more than reasonable under the circumstances when viewed through a lense of common sense and in light of the fact that the decedent falsely stated that he had swallowed a pencil in an obvious effort to conceal that he had in fact swallowed an illegal substance.

9. The court realizes that not every case requires a person to display outward symptoms of illness or injury to require medical attention under the Fourth Amendment. For instance, knowledge that a person ingested even a small amount of a known poison such as cyanide would trigger a duty to seek medical care. Cocaine, however, is not inherently dangerous if ingested and would depend on how much was in fact swallowed. In this case, the information available to the officers absent the symptoms was insufficient to trigger liability.

10. Even if the court were to consider this as a claim of deliberate indifference under the Fourteenth Amendment, the result would be the same as none of the officers knew or had reason to know of a serious medical need prior to the decedent displaying symptoms at the police station.